Filed 3/11/21  P. v. Luna CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B301823 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A886931) |
| v. | |
| GILBERT THOMAS LUNA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rogelio Delgado, Judge.  Reversed and remanded.

Dee A. Hayashi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

\*     \*     \*

Gilbert Thomas Luna (defendant) appeals the trial court's summary denial of his motion for relief under Penal Code section 1170.95.[1]  This was error because the record did not foreclose relief as a matter of law.  Accordingly, we reverse and remand for the trial court to conduct an evidentiary hearing.

## FACTS AND PROCEDURAL BACKGROUND

I.    **Facts**[2]

A.    *The underlying crime*

On October 10, 1987, Larry Hilario Viera (Viera) and defendant, who were both members of the El Monte Flores street gang, attacked Jake Armenta (Armenta).  Viera beat Armenta with a metal bumper jack while defendant kicked him.  Armenta died from his wounds.

B.    *Charging, conviction and appeal*

The People charged (1) Viera and defendant with murder (§ 187), and (2) Viera with assault with a deadly weapon (§ 245, subd. (a)(1)).  As to the murder count, the People further alleged that Viera had personally used a dangerous and deadly weapon (§ 12022, subd. (b)).

The trial court instructed the jury on the crimes of murder (in both first and second degrees) as well as the lesser included offenses of voluntary manslaughter (due to heat of passion) and involuntary manslaughter (as a killing that occurred in the course of committing the misdemeanor crime of battery).  The

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    We draw these facts from our prior, unpublished appellate opinion affirming defendant's conviction on appeal.  (*People v. Viera et al.* (May 28, 1991, B041023) [nonpub. opn.].)

2

court also instructed the jury that defendant could be found guilty of murder or manslaughter on one of two theories—namely, (1) for aiding and abetting Viera in committing the murder or manslaughter (the so-called direct aiding and abetting theory, which is underlined in the next footnote setting forth the actual instruction), or (2) for aiding and abetting Viera in committing a lesser crime (such as the felony of assault with a deadly weapon or the misdemeanor of battery), if the jury also found that homicide is a natural and probable consequence of that lesser crime (the so-called natural and probable consequences theory, which is italicized in the next footnote setting forth the actual instruction).[3]  Indeed, the jury instructions expressly noted that the natural and probable

---

[3]      In pertinent part, the jury was instructed:
       "The persons concerned in the [commission] [or] [attempted commission] of a crime who are regarded by law as principals in the crime thus [committed] [or] [attempted] and equally guilty thereof include:
       "1. Those who directly and actively [commit] . . . the act constituting the crime, or
       "2. Those who aid and abet the [commission] . . . of the crime.
       "3. *This count refers specifically to the Defendant, Gilbert Luna.  [¶]  One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any act that he knowingly and intentionally aided or encouraged.  It is for you, the jury, to determine whether the defendant is guilty of the crime allegedly contemplated, and, if so, whether the crime charged was a natural and probable consequence of the criminal act knowingly and intentionally encouraged.*"
(Emphases added.)

3

consequences theory "refers specifically to the defendant, Gilbert Luna."

The jury was given a separate "verdict form[] for each count charged and for each lesser and necessarily included offense." The jury filled out the "Not Guilty" verdict form for first degree murder, and the "Guilty" verdict form for second degree murder. The "Guilty" verdict form for second degree murder contained a pre-typed description of the crime, which read:  "crime of murder in the second degree in violation of Penal Code section 187(a), a felony, who did willfully, unlawfully and with malice aforethought murder Jake Armenta, a human being, as charged in count one of the information."

The trial court then sentenced defendant to 15 years to life in prison.

Defendant appealed, challenging two evidentiary rulings and two instructional rulings.  As pertinent here, defendant challenged the involuntary manslaughter instruction on the ground that it did not set forth the elements of the misdemeanor crime of battery.  We agreed that this was error, but concluded that it was not prejudicial (1) because the crime that defendant aided and abetted "was no mere misdemeanor battery," and (2) because "the jury found that [defendant] shared Viera's elevated mental state, namely malice."

## II.    Procedural Background

On January 28, 2019, defendant filed a petition seeking resentencing under section 1170.95.  In the form petition, defendant checked the boxes for the allegations that he had been charged with murder, that he was convicted "pursuant to the felony murder rule or the natural and probable consequences doctrine," and that his murder conviction would be invalid under

4

the "changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

The People filed an informal response arguing that (1) section 1170.95 is unconstitutional, and (2) defendant was not in any event entitled to relief under section 1170.95 because the jury in his case was never instructed on the natural and probable consequences theory. This second argument was factually incorrect because, as noted above, the jury in defendant's case *was* instructed on the natural and probable consequences theory.

The trial court appointed counsel for defendant, and counsel filed points and authorities in support of defendant's petition. Counsel argued that section 1170.95 was constitutional, but incorrectly agreed with the People that defendant's jury had not been instructed on the natural and probable consequences theory.

The trial court subsequently entered orders declaring section 1170.95 to be constitutional, but concluding that the court file "reflects that [defendant] was not convicted under a theory of felony murder or a theory of natural and probable consequences."

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in summarily denying his section 1170.95 petition because the court's reason for denying relief is incorrect. Because the trial court's reason for summarily denying relief turns on its interpretation of section 1170.95 and the application of law to undisputed facts, our review of that reason is de novo.[4] (*People v. Blackburn* (2015) 61

---

[4] Because our review is de novo, we grant the People's request to take judicial notice of the record from the prior appeal in this case and consider its contents.

Cal.4th 1113, 1123; *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.)

A person filing a petition under section 1170.95 is entitled to the appointment of counsel, the opportunity for further briefing and a hearing if, in his petition, he "makes a prima facie showing that he . . . is entitled to relief" under that section. (§ 1170.95, subds. (c) & (d); *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139-1140, review granted Mar. 18, 2020, S260598 (*Lewis*); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, review granted Mar. 18, 2020, S260493 (*Verdugo*).) A person is entitled to relief under section 1170.95 if, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) he "was convicted of second degree murder," and (3) he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) A person may be convicted of murder, even after the 2019 changes made to sections 188 and 189, if he (1) "was the actual killer," (2) aided and abetted the actual killer with the intent to kill, or (3) "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e).) A "'prima facie showing is one that is sufficient to support the position of the party in question.'" (*Lewis*, at p. 1137, quoting *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 851.)

On the facts of this case, defendant has made the requisite prima facie showing for relief because his petition alleges that he was charged with murder under a natural and probable

consequences theory, was convicted of second degree murder, and "could not now be convicted of first or second degree murder."

To be sure, a trial court evaluating whether a defendant has made a prima facie showing in a section 1170.95 petition is not required to accept the petition's allegations at face value and may also examine the record of conviction—which includes the jury instructions and verdict forms as well as any prior appellate decisions. (*Lewis*, *supra*, 43 Cal.App.5th at p. 1138; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 899-900, 908-909, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 968 (*Drayton*); *People v. Edwards* (2020) 48 Cal.App.5th 666, 673-674, review granted July 8, 2020, S262481; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011 (*Torres*); but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 121-123, review granted Nov. 10, 2020, S264684 [rejecting *Lewis* and its progeny]; see also *People v. Woodell* (1998) 17 Cal.4th 448, 451 (*Woodell*) ["the record of conviction" includes "the *appellate* court record, including the appellate opinion"]; *People v. Reed* (1996) 13 Cal.4th 217, 223 ["record of conviction" includes "the preliminary hearing transcript"].) But the contents of the record of conviction defeat a defendant's prima facie showing only when the record "show[s] *as a matter of law* that the petitioner is not eligible for relief." (*Lewis*, at p. 1138, italics added; *Verdugo*, at p. 333; *Torres*, at p. 1177; *Drayton*, at p. 968; see also *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410 [record must show defendant is "indisputably ineligible for relief"].) A defendant is ineligible for relief *as a matter of law* only in cases where the record conclusively shows that the jury actually (either expressly or implicitly) relied—and the

defendant's murder conviction actually rests—upon a theory of liability that is unaffected by section 1170.95 (that is, on the theory that defendant was the actual killer or directly aided and abetted the killing). (Accord, *People v. Nunez* (2020) 57 Cal.App.5th 78, 97 [looking to what the "jury necessarily found"].)

Here, the record of conviction does not establish, *as a matter of law*, that defendant is not eligible for relief under section 1170.95. The jury was instructed on two theories of criminal liability for second degree murder—the direct aiding and abetting theory, and the natural and probable consequences theory—and the jury was given a general "guilty" verdict form for second degree murder that did not permit it to specify on which of those two theories its verdict was actually based. Although the prosecutor, in closing, emphasized the direct aiding and abetting theory, the prosecutor never disavowed the natural and probable consequences theory; it was still on the table. (See *People v. Austell* (1990) 223 Cal.App.3d 1249, 1252 [theory prosecutor disavows will not be deemed to be basis for conviction].) Nor can we infer which theory underlays the jury's second degree murder verdict from any of the jury's other findings, as the jury's only other finding was that Viera personally inflicted great bodily injury using the bumper jack. As a result, the record of conviction does not eliminate the possibility that the jury found defendant guilty of second degree murder under the natural and probable consequences theory and hence does not "show *as a matter of law* that [defendant] is not eligible for relief." (*Lewis, supra,* 43 Cal.App.5th at p. 1138.)

The People resist this conclusion with two arguments.

First, the People argue that the jury necessarily found defendant guilty of second degree murder under the direct aiding

and abetting theory because the guilty verdict form the jury signed described the crime at issue as "the crime of murder in the second degree in violation of Penal Code section 187(a), a felony, who did willfully, unlawfully *and with malice aforethought,* murder Jake Armenta."  (Italics added.)  But the italicized language cannot bear the weight the People put on it.  The language on a verdict form is not always dispositive because the findings reflected by that verdict form are a product of the ""the issues submitted to the jury *and the instructions of the court*.""" (*People v. Jones* (1997) 58 Cal.App.4th 693, 710 (*Jones*), italics added; *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1272-1273 [noting that the "form of the verdict is immaterial"].)  This is why the language in a verdict form must be ""construed in light""" of those issues and instructions.  (*Jones*, at p. 710.)  Here, the instructions presented the jury with two possible routes to a guilty verdict on the second degree murder charge and the general verdict form the jury was given did not permit the jury to specify which of those two routes it traveled.  This is not a case where the jury was given two guilty verdict forms for second degree murder—one grounded on a direct aiding and abetting theory (and using the phrase "malice aforethought") and another grounded on a natural and probable consequences theory (and omitting the phrase "malice aforethought")—such that we might be able to infer that the jury's use of one verdict form rather than the other indicated the basis for its guilty verdict.  Instead, the jury was given a single, general guilty verdict form for the crime of second degree murder that had the statutory definition of the crime of second degree murder pre-printed on it.  (See § 187.)  In these circumstances, the presence of the phrase "malice aforethought" is not a proxy for a finding by the jury that

defendant was guilty as a direct aider and abettor (and thus acted with the intent to kill that would render him ineligible for relief under section 1170.95 as a matter of law).

Second, the People argue that we, in our 1991 opinion affirming defendant's conviction, recounted that "the jury found that [defendant] shared Viera's elevated mental state, namely malice" in the course of explaining why the instructional error regarding the lesser included offense of involuntary manslaughter was not prejudicial. This finding, the People continue, is part of the record of conviction and must therefore be given dispositive weight. Prior appellate court decisions in a case are typically viewed as part of the record of conviction—and typically sidestep the hearsay rule—because they merely "reflect[] what is in the trial record." (*Woodell*, *supra,* 17 Cal.4th at p. 456.) But what if a decision got the trial record wrong? Our Supreme Court tells us that "not . . . all appellate opinions" "establish" what happened before the trial court and "[w]hether and to what extent an opinion is probative in a specific case must be decided on the facts of that case." (*Id.* at p. 457.) Here, our prior opinion appears to have made the same mistake as the People, defendant's lawyer, and the trial court in this case—it treated boilerplate language in a general verdict form as being an express finding of the jury when the instructions and verdict forms presented to that jury demonstrate that there was no such express finding. In such circumstances, we decline to give dispositive weight to the language in our prior decision.

\*　　\*　　\*

In light of our analysis, we have no occasion to separately analyze defendant's additional argument that his counsel was constitutionally ineffective for making an incorrect concession:

The concession was incorrect and thereby failed to alert the trial court to the error we now find warrants reversal. Accordingly, defendant should be appointed new counsel on remand.

## DISPOSITION

The order is reversed. On remand, the trial court is to appoint new counsel and conduct the hearing required by section 1170.95, subdivision (d)(3) at which it is the prosecution's burden to prove beyond a reasonable doubt that defendant is "ineligible for resentencing" under section 1170.95.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


I concur:


_____, P. J.
LUI

11

*People v. Luna,* B301823

ASHMANN-GERST, J.—Dissenting

 I would affirm.
 A. <u>Trial court decision not reviewable</u>
 Below, Gilbert Thomas Luna's (Luna) counsel filed a brief stating that Luna "was convicted of [section] 187 but not pursuant to either a felony murder or natural and probable consequences theory of culpability. His jury was not instructed on either of those theories of culpability. Rather, [Luna] was prosecuted as a direct aider and abettor[.]" The trial court could have relied upon these concessions, justifying its denial of Luna's petition for resentencing. If there was legal error in denying Luna's petition, that error was invited and is not reviewable on appeal. (*Norgart v. Upjohn* Co. (1999) 21 Cal.4th 383, 403.)
 B. <u>Ineffective assistance of counsel</u>
 Luna contends that he was provided with ineffective assistance of counsel stemming from counsel's erroneous concessions. Based on the record, it appears that the concession that Luna was prosecuted as a direct aider and abettor was correct. But even assuming counsel fell below the standard of reasonable competence by making a concession that undermined Luna's petition for resentencing, Luna is not entitled to relief because he did not suffer prejudice.
  1. *The law*
 "To prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.] When a claim of ineffective assistance [of counsel] is made on direct appeal, and the record does not show the reason

for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.) Reversal is required only if it is reasonably probable that the result would have been more favorable to the defendant but for his counsel's errors. (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

    2. *Proceedings below*

      a. <u>Jury instructions</u>

The jury was instructed on the following crimes: first degree murder, second degree murder, and voluntary and involuntary manslaughter.

Regarding murder, the jury was given CALJIC No. 8.10 and instructed generally that murder is the unlawful killing of a human being with malice. As a follow up, they were instructed pursuant to CALJIC No. 8.11 and told: "'Malice' may be either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when the killing results from an intentional act involving a high degree of probability that it will result in death, which act is done for a base, anti-social purpose and with a wanton disregard for human life or when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life."

2

After instructing the jury on the crimes, the trial court instructed the jury with the CALJIC Nos. 3.00 and 3.01, the instructions related to principals and aiding and abetting.

Pursuant to CALJIC No. 3.00, the jury was told: "The persons concerned in the commission . . . of a crime who are regarded by law as princip[als] in the crime thus committed . . . and equally guilty thereof include first those who directly and actively . . . commit the act constituting the crime or [second] those who aid and abet the commission . . . of the crime. [¶] One who aids and abets is not only guilty of a particular crime that to his knowledge his confederates are contemplating committing, but he's also liable for the natural and probable [consequences] of any act that [he] knowingly and intentionally aided or encouraged.[1] [¶] It's for you, the jury, to determine whether the defendant is guilty of the crime allegedly contemplated and if so, whether the crime charged was a natural and probable consequence of the criminal act knowingly and intentionally encouraged."

No one requested, the parties did not discuss, and the trial court did not give the jury CALJIC No. 3.02, titled "Princip[als]—Liability for Natural and Probable Consequences."[2]

---

1    Immediately before this sentence in the written version of CALJIC No. 3.00 given to the jury, the following handwritten sentence was inserted: "This count refers specifically to the defendant, Gilbert Luna."

2    The version of CALJIC No. 3.02 in effect at the time of the trial stated: "One who aids and abets is not only guilty of the particular crime that to [his][her] knowledge [his][her] confederates are contemplating committing, but [he] [she] is also liable for the natural and probable consequences of any criminal

3

b. <u>Prosecutor's closing argument</u>

The prosecutor explained to the jury that murder requires a showing of an unlawful killing of a human being with malice aforethought. He described express and implied malice. After explaining implied malice, he stated that "[t]here is an alternative that sounds almost exactly the same. The person does an intentional act the natural consequences of which are dangerous to life. 'The act is deliberately performed by a person who knows that his conduct . . . endangers the life of another and who acts with conscious disregard of life.'" The prosecutor went on to argue that "[w]hat each of those boils down to is you did this act. You knew what you were doing when you did the act. You knew it was dangerous to life or could result in death, and you went ahead and did it anyway for either a . . . [conscious] disregard for life or for a base anti-social purpose. Either one of these would apply in our case. There can't be any social purpose in beating someone with a bumper jack who is lying on the ground. [¶] These are the elements of murder. This is what malice consists of."

The prosecutor noted that Luna was charged with aiding and abetting, and that the evidence had to show that Luna knew what was occurring. "Well," the prosecutor said, "[Luna is] standing there apparently kicking the [victim] at the same time as Larry [Hilario] Viera [(Viera)] is striking [the victim] in the

_____

act that [he][she] knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crime charged [in Count[s] _____] was a natural and probable consequence of such originally contemplated crime." (CALJIC No. 3.02 (5th ed. 1988); see also *People v. Prettyman* (1996) 14 Cal.4th 248, 258, fn. 2.)

4

head with the bumper jack.  I don't see how [Luna] could deny knowledge of what was happening.  There was an intent to kill."  "[K]icking someone while they're on the ground while someone else is striking with a weapon shows your knowledge.  It shows your intent to aid and abet."

### c.  Defense counsel's closing argument

Luna's counsel did not argue whether Luna acted with or without malice.  Rather, counsel only argued that there was insufficient evidence identifying Luna as a participant in the homicide.

### d.  Jury verdict

After deliberation, the jury rendered a verdict pursuant to a verdict form that stated:  "We, the jury . . . find . . . [Luna] guilty of [the] crime of murder in the second degree in violation of Penal Code section 187 [subdivision (a)],[3] a felony, who did willfully, unlawfully, and with malice aforethought murder Jake Armenta [(Armenta)]."

### 3.  *Analysis of prejudice*

Luna suffered prejudice only if the jury's finding of malice is in doubt and he was therefore entitled to an evidentiary hearing under section 1170.95, subdivision (d) to determine if he is entitled to resentencing.

The question is whether we should honor the jury's finding of malice, or conclude that it is unreliable because the jury may not have been given alternative verdict forms as the majority contends, one recognizing a malice theory of liability, the other recognizing a natural and probable consequences theory of

---

[3]    All further statutory references are to the Penal Code unless otherwise indicated.

liability that did not require a finding of malice. (*People v. Gentile* (2020) 10 Cal.5th 830, 847 (*Gentile*) ["an aider and abettor need not personally possess malice, express or implied, to be convicted of second degree under a natural and probable consequences theory"].) The only reason to not honor the jury's finding of malice is if it is possible that Luna was convicted on a theory that was abolished by Senate Bill No. 1437 (SB 1437). As *Gentile* explained, the purpose of SB 1437 was "'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*Gentile*, *supra*, 10 Cal.5th at p. 849.) "Indeed, the natural and probable consequences doctrine authorizes precisely what [SB 1437] forbids: it allows a fact finder to impute malice 'to a person based solely on his or her participation in a crime.' [Citation.]" (*Id*. at p. 847.)

Answering the question presented requires interpretation of the jury's verdict.

"The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. [Citation.]" (*People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1256.) Where "a jury's verdict is ambiguous, 'A verdict is to be given a reasonable intendment and . . . construed in light of the issues submitted to the jury and the instructions of the court.' [Citations.]" (*Ibid*.) Also, the verdict should be considered in light of the prosecutor's closing argument. (*Ibid*.)

Here, the jury instructions and the argument of the prosecutor confirm that the jury found Luna guilty of second degree murder with malice aforethought, and there is no basis to

6

conclude that the verdict is an unreliable indicator that the jury found that Luna acted with malice.

The jury was instructed that murder is the unlawful killing of another with malice. It was not instructed under the natural and probable consequences doctrine that Luna could be held liable for "any reasonably foreseeable offense committed by the person [the defendant] aids and abets. [Citation.]" (*People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5.)[4] Also, the jury was not instructed to consider whether Luna was guilty of a specified target offense (for example, assault), and that murder was the natural and probable consequence of the commission of the specified target offense.[5] That the words natural and probable consequences were used in the instruction given does not mean the defendant was tried on the natural and probable consequences doctrine or that the jury was asked to make a finding on that theory. Further, if the trial court had intended to give an instruction on a natural and probable consequences theory of liability (or if it had been the prosecutor's theory of the case), the parties could have requested, and the trial court could have used, CALJIC No. 3.02.

---

[4]     I recognize that this language was not in CALJIC No. 3.00 at the time of trial. Nonetheless, I conclude that the absence of such language meant the jury was not oriented toward a natural and probable consequences inquiry.

[5]     The version of CALJIC No. 3.00 in use at the time did not require the target crime to be specified. In any event, Luna was not charged with any other crime except for murder. In contrast, Luna's codefendant, Viera, was not only charged with the murder of Armenta, he was also charged with and convicted of "assault great bodily injury and with deadly weapon" upon Paul Martinez.

7

The prosecutor indicated that malice is necessary for murder.  Then, he equated implied malice and the natural and probable consequences theory of liability.  He said that they sound "almost exactly the same."  More importantly, he defined the natural and probable consequences theory by borrowing from the instruction on implied malice, stating that it required a showing that a person acted deliberately knowing he was endangering the life of another or, stated another way, he acted with a conscious disregard of life.[6]  The prosecutor explained that all the theories of murder boiled down to "you did this act.  You knew what you were doing when you did the act.  You knew it was dangerous to life or could result in death, and you went ahead and did it anyway for either a . . . [conscious] disregard for life or for a base anti-social purpose."

---

[6]     As our Supreme Court has explained:  "[i]mplied malice . . . has both a physical and a mental component.  The physical component is satisfied by the performance of 'an act, the natural consequences of which are dangerous to life.'  [Citation.] The mental component is the requirement that the defendant 'knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life.'  [Citation.]" (*People v. Patterson* (1989) 49 Cal.3d 615, 626.)

8

Based on the instructions and the prosecutor's argument, the jury was asked to decide whether to convict Luna of second degree murder on a malice theory. It was not asked to convict him based on the natural and probable consequences doctrine. I conclude there is no ambiguity as to whether the jury found malice, and Luna cannot establish that he was prejudiced by defense counsel's concession. As a matter of law, he is ineligible for relief under section 1170.95.


_____, J.
ASHMANN-GERST

9